**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

WILLIAM SNOOKS,              )
                                      )
            Plaintiff,           )
                                        )
           v.                  )        Civil Action No. 06-01463
                                        )        Judge Nora Barry Fischer
DUQUESNE LIGHT COMPANY,     )
                                        )
           Defendant.      )

## MEMORANDUM OPINION

This action arises out of Defendant Duquesne Light Company's decision to promote a Caucasian female as opposed to the Plaintiff, an African-American male, to the position of McKeesport Field Activities Supervisor, which, Plaintiff contends, violated his federal civil rights as to race and gender discrimination. Because the Court disagrees with Plaintiff's contention, Defendant's Duquesne Light Company's Motion for Summary Judgment [DE 17] will be granted.

## FACTS

Defendant is a supplier of electric energy for a variety of customers, including other utilities and approximately 580,000 direct consumers in southwestern Pennsylvania. Docket No. 19, Statement of Undisputed Material Facts at ¶ 1 (hereinafter, "SOF"). Plaintiff is an African-American male, who was hired by Defendant on November 8, 1976. SOF at ¶¶ 1, 5. Plaintiff currently works as a Customer Activity Specialist B ("Specialist B") at Defendant's Penn Hills office. SOF at ¶ 5, 9. Plaintiff has performed the duties of a Specialist B for more than five years and is responsible for disconnecting and reconnecting electrical services to consumers whose electric services have been

suspended as a result of nonpayment. SOF at ¶¶ 6,8. In May of 2004, a Field Activities Supervisor vacancy for Defendant's McKeesport office was posted on Defendant's Penn Hills office bulletin board. SOF at ¶ 12. The position required the following qualifications: "Bachelor's degree in business or equivalent with five years experience in the Field Services area. Knowledge and understanding of the customer information and mobile data systems." SOF at ¶ 13. In other words, a bachelor's degree in business is not required for the position and Defendant considers five years of experience in the Field Services area to be the equivalent of a bachelor's degree.[1] SOF at ¶¶ 14-15. Plaintiff has a Bachelor of Science degree in Psychology. SOF at ¶ 29; Plaintiff's Facts at ¶ 11. The resume that Plaintiff submitted for the supervisor position indicates that he has a "Bachelor of Science in Business/Psychology."[2] SOF at ¶¶ 30-31.

Seven employees, including Plaintiff, applied for the vacant Field Activities Supervisor position at the McKeesport office. SOF at ¶ 28. Candidates for the Field Activities Supervisor position were to be interviewed by Lisa Minor, James Cole, and Keith McGill. SOF at ¶ 18. Ms. Minor is a Human Resource Specialist with Defendant and her role is to assist managers with the interview process and only to offer her opinion of the candidates if requested to do so.[3] SOF at ¶¶

[1]

Plaintiff contends that the "equivalent" term in the qualification requirement means that a candidate could have a Bachelor's degree in Business or a degree in another field plus five years of experience in the Field Services area. Plaintiff's Facts at ¶ 35.

[2]

In his deposition, Plaintiff explained that he listed "Business" because he planned to obtain a Master's degree in the Business field. Docket No. 26, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts at ¶ 31 (hereinafter, "Plaintiff's Response").

[3]

Plaintiff argues that Ms. Minor's role extended beyond merely assisting the managers because she reviewed and screened candidate applications, set up interviews, prepared and asked the candidates questions during the initial interview, and summarized candidate performance by creating

19-21. Mr. Cole is the Administrator of Field Services for Defendant and reports to Mr. McGill. SOF at ¶ 22. Prior to becoming Manager of Automated Meter Requests and Meter Operations, Mr. McGill was the Manager of Field Services and Energy Diversion from July of 2004 to December of 2005 and supervised the Field Activities Supervisors for all Field Services areas. SOF at ¶¶ 23-26. Mr. McGill was responsible for filling the McKeesport Field Activities Supervisor position.[4] SOF

a ranking matrix. Plaintiff's Response at ¶¶ 16, 21.

[4] Plaintiff argues that Mr. Cole helped decide who should be hired for the position. Plaintiff's Response at ¶ 27. However, the record shows that Mr. Cole gave his recommendation to Mr. McGill but did not learn that Ms. Stoehr had been offered the position until Mr. McGill advised him of it. *See,* Docket No. 27, Exh. 3, at 40:14-15, 43:1-3 (Deposition of James Cole)(hereinafter, "Cole Deposition").

With respect to evidence offered by Defendant (such as the deposition testimony of Mr. McGill, Mr. Cole, Ms. Minor, and Ms. Stoehr), Plaintiff argues, in passing, that the Court "must reject the testimony of such interested witness, like that from Defendant's current employees, even if testimony is unimpeached." Docket No. 24, Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, at 3 n.2 (hereinafter, "Plaintiff's Opposition"). Plaintiff relies upon *Hill v. City of Scranton*, 411 F.3d 118 (3d Cir. 2005), in which the Third Circuit noted that "when evaluating a summary judgment motion a court should not consider even uncontradicted testimony of an interested witness where that testimony supports the movant." *Id.* at 132 n.22 (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 149-151 (2000)). However recently, the Third Circuit limited the above language in *Hill*, noting that the Court there "made [its] comment regarding disregarding testimony of interested witnesses *after* [it] explained that the case involved contradictory evidence." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 271-72 (3d Cir. 2007) (emphasis added). On the contrary here, Plaintiff fails to direct the Court to specific contradictory facts between Plaintiff and the purported interested witnesses, and the Court finds no such contradictions on its own. Nonetheless, the Third Circuit in *Lauren W* further explained that "[t]he fact is that in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness." *Id.* at 272; *see also Stratienko v. Cordis Corp.*, 429 F.3d 592, 598 (6th Cir. 2005) (discussing the consideration of testimony of a moving party's interested witness and noting that "the issue, therefore, is not whether the district court could consider the affidavits of [an interested witness] but instead whether the affidavits were uncontradicted"). Here, as demonstrated *infra*, the Court finds that the deposition testimony of the purported interested witnesses are not "inherently implausible" and Plaintiff has failed to establish the contrary. *See also Stratienko*, 429 F.3d at 597-98 (noting plaintiff's misinterpretation of the language in *Reeves* "to mean that courts may never consider affidavits of interested persons when the affidavits are submitted by a moving party" and explaining that "courts

3

at ¶ 27.[5]

Mr. McGill reviewed the applications and selected the following five candidates to be interviewed on August 5, 2004: Plaintiff (African-American, male), Lisa Stoehr (Caucasian, female), William Robinson (African-American, male), Earl Roshon (Caucasian, male), and Joseph Stolarz (Caucasian, male). SOF at ¶¶ 33-34, 39. Ms. Stoehr, Mr. Robinson, and Mr. Stolarz do not have college degrees. SOF at ¶ 35. To ensure fairness, Mr. McGill, Mr. Cole, and Ms. Minor asked the same questions to all candidates during their respective interviews. SOF at ¶ 40. Following the initial interviews, Ms. Minor developed her own rating matrix of the candidates to summarize her view of the candidates but this was not a requirement of the interview process under Defendant's company policy. SOF at ¶ 47. With respect to the matrix, Ms. Minor gave Plaintiff a total of 4.6 points and Ms. Stoehr a total of 4.4 points. SOF at ¶ 48; Docket No. 25, Plaintiff's Statement of Material Facts Precluding Summary Judgment ("Plaintiff's Facts") at ¶¶ 69-71. Mr. McGill believed that a second round of interviews was needed to select the candidate for the available position and all three interviewers concluded that both Plaintiff and Ms. Stoehr should be offered the second interview. SOF at ¶ 49-50. Defendant's policies do not require a second set of interviews but the three interviewers decided that a second interview would serve as a "tie breaker" because

_____

can consider the testimony of a moving party's interested witnesses" insofar as the above interpretation of *Reeves* " 'leads to absurd consequences' because defendants will often be able to respond only through testimony of their employees") (citing *Almond v. ABB Indus. Sys.*, 56 Fed. Appx. 672, 2003 WL 173640, at *2 (6th Cir. Jan. 22, 2003)).

[5]

During his employment with Defendant, Mr. McGill has hired twenty individuals, five of whom are African-American and fifteen who are males. SOF at ¶ 127-129.

both Plaintiff and Ms. Stoehr performed similarly during the initial interviews.[6] SOF at ¶ 51.

During this time, Mr. McGill, as a new manager, wanted to spend a day in the field at each of Defendant's four Field Services locations, also referred to as a "ride-along", because he wanted to acquaint himself with the duties of a Specialist B. SOF at ¶¶ 53-54, 58. Mr. McGill had no role in selecting which Specialist B would accompany him at each location. SOF at ¶ 56. Instead, Mr. McGill asked the Field Activity Supervisors to pick each Specialist B. SOF at ¶ 55. Ms. Stoehr was selected by Al Duss, the Penn Hills Field Activities Supervisor, to escort Mr. McGill in the field on August 17, 2004. SOF at ¶¶ 58-60. Mr. McGill and Ms. Stoehr did not discuss the vacant Field Activities Supervisor position during the day spent in the field. SOF at ¶ 61. Furthermore, Plaintiff admits that he does not know what Mr. McGill and Ms. Stoehr discussed during their day, except that Ms. Stoehr stated that she put Mr. McGill "through the ropes." SOF at ¶ 62; Plaintiff's Facts at ¶¶ 81-85.

The second interview was conducted on August 19, 2004. SOF at ¶ 66. Only Mr. Cole and Mr. McGill were present during the second interview because Ms. Minor was on vacation at the time. SOF at ¶¶ 64-65. Both Plaintiff and Ms. Stoehr were asked the same questions regarding several scenarios that a supervisor might encounter at work. SOF at ¶¶ 68, 72. Based on their answers, Mr. McGill noted that Ms. Stoehr demonstrated a greater understanding of corporate policies and procedures[7], particularly with respect to Defendant's progressive discipline policy and

---

[6]

Plaintiff argues that there was no "tie-breaker" at the conclusion of the first interviews because he performed the best and was the highest ranked candidate as shown by Ms. Minor's matrix. Plaintiff's Response at ¶¶ 49-51.

[7]

Mr. McGill testified that Plaintiff specifically did not have a understanding of Defendant's corporate policy with respect to the first, second, and fifth questions. *See* Docket No. 27, Exh. 1, at

drug and alcohol testing policy. SOF at ¶ 80-83. Specifically, Defendant states that Plaintiff did not

discuss the application of Defendant's progressive discipline policy to the first question whereas Ms.

Stoehr stated that she would counsel the employee, involve the human resources department, and

take action if needed. SOF at ¶¶ 73-74. With respect to the second question, Plaintiff did not have

an answer on handling the scenario situation and Ms. Stoehr provided a more detailed answer as to

Defendant's drug and alcohol testing policy.[8] SOF at ¶¶ 75-78. Moreover, Mr. McGill testified that

he also had to ask Plaintiff a leading question with respect to the fifth question. McGill Deposition,

at 49:14-20 ("Q: And what leading question did you ask [Plaintiff] with respect to question number

5? A: If the behavior did not change, what would be the next steps be. Q: And did [Plaintiff] have

a response to that question? A: No, he did not."). Both Mr. Cole and Mr. McGill believed that Ms.

Stoehr was the better candidate for the Field Activities Supervisor position and, therefore, Ms. Stoehr

---

51:9-12 (Deposition of Keith McGill) (hereinafter, "McGill Deposition").

[8]

    The parties dispute Plaintiff's and Ms. Stoehr's responses during the second interview. Plaintiff contends that he accurately discussed Defendant's drug testing policy in response to the second question in his second interview. Plaintiff's Facts at ¶¶ 5, 94. Furthermore, Plaintiff asserts that Ms. Stoehr did not mention Defendant's progressive discipline policy in the first question and that neither he nor Ms. Stoehr mentioned Defendant's progressive discipline policy in their answers to the fifth question. Plaintiff's Response at ¶ 74; Plaintiff's Facts at ¶¶ 7, 99. Defendant replies that Plaintiff only discussed the drug testing after being prompted by Mr. McGill. Docket No. 29, Defendant's Responses to Plaintiff's Statement of Material Facts Precluding Summary Judgment at ¶ 4 (hereinafter, "Defendant's Responses"); McGill Deposition, at 49:3-10 ("I asked him what he would do if there were injuries or damage to personal property, and he didn't have an answer to that. . . I kept asking what the next step would be for that."). Additionally, Defendant responds citing Mr. Cole's testimony that Ms. Stoehr mentioned Defendant's progressive discipline policy with respect to the first and fifth questions but he did not write anything down on the second interview response form during Ms. Stoehr's interview about her response to the fifth question. Defendant's Responses at ¶ 7, 99.

was offered the position.[9]  SOF at ¶ 84-87.

On August 27, 2004, Plaintiff contacted Ms. Minor to express his disagreement with Ms. Stoehr's promotion and to inquire as to why he was not selected for the position.  SOF at ¶ 91. Subsequently, Mr. McGill offered to mentor Plaintiff because he believed Plaintiff was a strong candidate but lacked a sufficient understanding of corporate policy and procedure.[10]  SOF at ¶¶ 92-97.  Furthermore, Plaintiff's Field Activities Supervisor planned to retire, a position which Mr. McGill believed that Plaintiff would be prepared for following the mentor program.  SOF at ¶¶ 95-98.  Mr. McGill scheduled an appointment with Plaintiff to review his interview responses but Plaintiff subsequently changed his mind and refused to meet.  SOF at ¶¶ 99-100.  Plaintiff states that he did not trust Mr. McGill because Defendant failed to mention any mentor programs in the rejection letter and he believes the mentoring offer was the result of Plaintiff's complaint to the Human Resources department.  Plaintiff's Facts at ¶ 118.  Furthermore, Plaintiff testified in his

---

[9]

The parties dispute whether Mr. McGill decided to offer Ms. Stoehr the position, as Defendant contends, *see* SOF at ¶ 87, or whether Mr. McGill *and* Mr. Cole decided to offer Ms. Stoehr the position, as Plaintiff contends, *see* Plaintiff's Responses at ¶ 87.

Additionally, the record shows that Mr. McGill testified that "Mr. Snooks had a good interview, he lacked a little bit in the understanding of corporate policy and procedure, and some of the questions he left fairly open-ended."  McGill Deposition, at 46:8-11.  Moreover, Mr. McGill stated that "it was generally that [Plaintiff] did not have the knowledge of the policies and procedures that Miss Stoehr had, as well as the detailed knowledge, as I said, of the corporate policies, as well as to draw conclusions on some of these questions."  McGill Deposition, at 53:1-6.  As well, Mr. Cole testified that he suggested Ms. Stoehr for the position "[b]ased on the interview."  Cole Deposition, at 40:18.

[10]

The Court also notes that upon review of the record, Mr. McGill mentioned the mentoring opportunity in his August 19, 2004 summary of the second interviews, which was the same day that those interviews were held.  Docket No. 28-2, Exhibit 1 to Defendant's Reply Brief in Support of Motion for Summary Judgment, at 8 ("Note: We have additional positions that may come sooner than later due to retirements.  Need to get [Plaintiff] some mentoring and he may make an excellent candidate").

deposition that he believed Mr. McGill "keeps women . . . around him more than men."  SOF at ¶ 125; Plaintiff's Response at ¶ 125.

In 2005, a Field Activities Supervisor position in the Defendant's Penn Hills office became available and Plaintiff applied for the position.  SOF at ¶¶ 104-105.  Plaintiff interviewed with Mr. McGill and another representative from Defendant's Human Resources Department and was asked similar questions to those asked during his second interview for the prior Field Activities Supervisor position.  SOF at ¶¶ 106-107.  However, Mr. McGill offered the position to Tausha Jackson, an African-American female with substantial supervisory experience.  SOF at ¶¶ 108-110.

## PROCEDURAL BACKGROUND

On September 9, 2004, Plaintiff filed a timely Charge of Discrimination that was cross-filed with the Equal Employment Opportunity Commission ("EEOC").  The EEOC issued a Notice of Right to Sue on September 18, 2006.  On November 3, 2006, Plaintiff filed a Civil Complaint, alleging race discrimination in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) ("Title VII").  Defendant filed its Answer on November 27, 2006.  On June 16, 2007, this matter was reassigned to the undersigned Judge.

After the parties declined alternative dispute resolution, on July 23, 2007, Defendant filed the instant Motion for Summary Judgment and Memorandum of Law in Support of Defendant Duquesne Light Company's Motion for Summary Judgment.  (Docket Nos. 17 and 18).  On September 10, 2007, Plaintiff filed his Opposition.  On September 17, 2007, Defendant filed its Reply Brief in Support of its Motion for Summary Judgment.  (Docket No. 28).  Accordingly, the Defendant's motion is ripe for disposition.

## STANDARD OF REVIEW

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In evaluating the evidence, the court must interpret facts in the light most favorable to the non-moving party, and draw all reasonable inferences in his favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007). Initially, the burden is on the moving party to demonstrate that the evidence in the record creates no genuine issue of material fact. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Here, this "may be accomplished by establishing the plaintiff's inability to raise a genuine issue of material fact as to either: (1) one or more elements of the plaintiff's prima facie case or, (2) if the employer offers a legitimate non-retaliatory reason for the adverse employment action, whether the employer's proffered explanation was a pretext." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 501 (3d Cir. 1997). While the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the admissible evidence in the record would be insufficient to carry the nonmovant's burden of proof at trial. *Celotex*, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the

nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. The nonmoving party "cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## ANALYSIS

In its motion, Defendant requests summary judgment on Plaintiff's race discrimination claim under Section 1981 as well as Plaintiff's race and gender discrimination claim under Title VII. Because "the elements of employment discrimination under Title VII are identical to the elements of a section 1981 claim," *Schurr v. Resorts Intern. Hotel, Inc.*, 196 F.3d 486, 499 (3d Cir. 1999) (citation omitted), and because the Plaintiff seeks to prove his claims through indirect or circumstantial evidence, the Court applies the same standard (and hence, analysis) to review both claims, i.e., the familiar burden-shifting analysis as articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See also Jones v. School District of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999).

Pursuant to *McDonnell Douglas* and its progeny, (1) plaintiff must establish a *prima facie* case; (2) defendant must then offer a legitimate nondiscriminatory reason for the employment decision in question; and (3) plaintiff must then demonstrate that the stated reason is a mere pretext for illegal discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802-803. However here, because Defendant apparently concedes the prima facie case for purposes of its motion, the Court declines to engage in that analysis and proceeds to the second prong–pretext.

After a plaintiff has established his *prima facie* case, the burden of production shifts to

Defendant, who must articulate a legitimate nondiscriminatory reason for denial of a promotion. *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). "This burden is 'relatively light,' and the employer need only 'introduc[e] evidence which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision.'" *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (citing *Fuentes*, 32 F.3d at 763).

Defendant asserts that it is entitled to summary judgment because it has articulated a legitimate, nondiscriminatory reason for selecting Ms. Stoehr for the Field Activities Supervisor position instead of Plaintiff, specifically that Ms. Stoehr performed better during the second set of interviews. Docket No. 18, Defendant's Motion to Dismiss, at 11 (hereinafter, "Defendant's Motion"). Based upon deposition testimony of Mr. McGill as well as the other interviewers testifying as to the same, *see* McGill Deposition at 52:17-19; Cole Deposition, at 40:9-18, the Court finds that Defendant easily meets this "relatively light" burden.

Once Defendant articulates a nondiscriminatory reason, Plaintiff must respond by citing evidence that the rationale is pretextual. *Fuentes*, 32 F.3d at 763. In order to create a genuine issue of material fact as to whether the proffered reason is pretextual, Plaintiff must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve Defendant's articulated legitimate reason for Plaintiff's denial of promotion; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Plaintiff's denial of a promotion. *See Fuentes v.* 32 F.3d at 763. Moreover, Plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' and hence[,] infer 'that the employer did not act for [the asserted]

non-discriminatory reasons.'" *Id.* at 765 (citations omitted) (emphasis in original).

Anticipating Plaintiff's arguments as to pretext, Defendant argues that the following do not support a finding of pretext: (i) the fact that Ms. Stoehr and Mr. McGill spent the day together in the field between the first and second interview; (ii) the adequacy of Ms. Stoehr's educational background and experience; (iii) Plaintiff's personal disagreement with Defendant's promotion decision; and (iv) the vague, unsupported allegation that "Mr. McGill likes to 'keep women ... around him more than men." Defendant's Motion, at 14. In response, Plaintiff contends that he has demonstrated evidence of pretext, sufficient that a reasonable jury would disbelieve Defendant's rationale. Therein, Plaintiff asserts that his proof of pretext should preclude summary judgment. The Court now addresses each of Plaintiff's proffered reasons as to pretext, in turn.[11]

1.      *Contradictory core facts*

Relying on *Tomasso*, Plaintiff argues that a fact finder "could believe [Plaintiff's] testimony over McGill's testimony" because Defendant's reason for not promoting Plaintiff, insofar as his lack of understanding corporate policy with respect to the progressive discipline and drug and alcohol

---

[11]

As a threshold matter, Plaintiff asserts that an enhanced standard of scrutiny is necessary because case law has recognized that "subjective criteria such as an interview performance are more susceptible to abuse and more likely to mask pretext." Plaintiff's Opposition at 6. Plaintiff relies on *Tomasso*, 445 F.3d at 706, which is a reduction in force termination case, and *Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 321 (3d Cir. 2000), which is a denial of promotion case. In accordance with *Goosby*, the Court will consider this matter under the refined scrutiny standard. However, it should also be noted that "use of subjective criteria alone does not establish that the employer's decision was discriminatory or pretextual. A plaintiff must identify some other evidence from which a reasonable juror could consider the subjective criteria to be a mask for discrimination." *Williams v. Rohm & Haas Co.*, Case No. 99-CV-5203, 2003 U.S. Dist. LEXIS 26559, at *50 (E.D. Pa. May 2, 2003) (citing *Goosby*, 228 F.3d at 321), *aff'd* 90 Fed. Appx. 627 (3d Cir. 2004) (not precedential). Defendant fails to address this issue in its reply and therefore, waives objection to the same.

policies, is false and erroneous. Plaintiff's Opposition, at 7-8. Plaintiff asserts that he mentioned Defendant's drug testing policy during his second interview for the McKeesport Field Activities position. *Id.*, at 8. Furthermore, Plaintiff contends that Defendant attempted to correct this error by stating that Plaintiff did not have a detailed knowledge of the drug testing policy, thereby admitting that Plaintiff referred to Defendant's drug policy. *Id.*

The evidence demonstrates that while Plaintiff mentioned the drug testing policy in his answer to the second question of the second interview, Mr. McGill's interview notes reveal that Plaintiff only discussed the matter after being prompted by Mr. McGill. *See* Docket No. 29-2, at 6 (Exhibit 11 to McGill Deposition) ("I asked about drug testing - he answered that he might depending on the circumstances"). Further, Plaintiff admits that interview notes were "an accurate account of [their] conversation." Docket No. 20, Exh. A, at 48:4-49:4. Thus, while the Court declines to comment on the quality or thoroughness of Plaintiff's answer to the second question of the second interview, Plaintiff's argument that core facts contradict Defendant's reasoning in failing to promote him is inconsistent with the evidence of record. Therefore, the Court finds that Plaintiff has failed to sustain his burden to establish pretext in this regard.

2.    *Impermissible double standard*

Plaintiff next contends that "Defendant applied an impermissible standard favoring white, female applicants." Plaintiff's Opposition, at 9. Specifically, with respect to the fifth question in the second interview about handling a situation where employees were using foul language in the work place, Plaintiff claims that neither he nor Ms. Stoehr mentioned the progressive discipline policy in their responses. *Id.* Additionally, Plaintiff argues that while Defendant states that "Ms. Stoehr had better knowledge of Defendant's policies and procedures than Plaintiff, Defendant

13

ignores that Ms. Stoehr's answer to question 5 was completely wrong." *Id.* Plaintiff alleges that Mr. Cole admitted both that Ms. Stoehr's response - that she would tell the employees to take it outside or keep it quiet - was wrong and that Plaintiff correctly answered the question. *Id.* Plaintiff argues that these circumstances demonstrate Defendant's double standard in its hiring process.

Plaintiff's first argument that neither he nor Ms. Stoehr discussed the company's progressive discipline policy during the fifth question is flawed. The record demonstrates that Ms. Stoehr did discuss progressive discipline. In fact, Mr. McGill's notes from the interview show that Ms. Stoehr discussed progressive discipline in her answer to the fifth question, stating that she would "begin disciplinary action if [the conduct] continued." Docket No. 29-2, Defendant's Responses, at 10 (Exhibit 12 to McGill Deposition). Therefore, no genuine issue of fact exists here.

With respect to Plaintiff's second argument, Plaintiff relies on *Iadimarco v. Runyon*, 190 F.3d 151 (3d Cir. 1999), asserting that a "reasonable jury could clearly disbelieve [Plaintiff] had less understanding of Defendant's policies than Stoehr when [Plaintiff] answered a key question about such corporate policies correctly and Stoehr did not." Plaintiff's Opposition, at 10. However, *Iadimarco* is clearly distinguishable from the instant case. In *Iadimarco,* the employer rated and ranked forty employees who applied for a promotion and only three employees, including the plaintiff, received superior ratings in each category. *Iadimarco*, 190 F.3d at 164. The two other employees that received superior ratings accepted other positions before the employer made promotion decisions so the employer re-posted the position, claiming that it did not want to award the promotion to the plaintiff by default. *Id.* The Third Circuit held that the decision not to award the plaintiff the promotion was pretextual because the employer hired another person who did not have a rating. *Id.* On the contrary here, Plaintiff did not receive a superior rating following his

second interview and the other applicant did not reject the position.  In five out of the seven questions, Mr. Cole testified that Ms. Stoehr answered the question better.  Cole Deposition, at 32:17-39:15.  Furthermore, Mr. Cole testified that Plaintiff and Ms. Stoehr responded to the fourth question similarly and Plaintiff answered only the fifth question better than Ms. Stoeher.  *Id.*, at 36:4-37:17.  Plaintiff's argument essentially asks the Court to re-weigh Defendant's employment decision because, according to Plaintiff, he answered one question better than Ms. Stoehr.  However, the employer "has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 259 (1981); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 242 (1989); *Falkenstein v. Neshaminy Sch. Dist.,* Case No.96-5807, 1997 U.S. Dist. LEXIS 10324, at *14 (E.D. Pa. July 14, 1997).  Furthermore, this Court "will not second-guess valid management decisions." *Berninger v. Keebler Co.*, Case No. 98-600, 1999 U.S. Dist. LEXIS 10162, at *10 (E.D. Pa. June 23, 1999) (citing *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 527 (3d Cir. 1992)).  *See also Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Srvs.* 165 F.3d 1321, 1329 (10th Cir. 1999) ("Our role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments"); *Rabinovitz v. Pena*, 89 F.3d 482, 487 (7th Cir. 1996).  Thus, Plaintiff fails to sustain its burden to establish pretext as to this argument.

3.      *The adequacy of Ms. Stoehr's educational background and experience*

        Plaintiff also argues that he was more qualified than Ms. Stoehr because he had a college degree, which Ms. Stoehr did not, and that he also had more relevant work experience.  Plaintiff's Opposition, at 12.  Furthermore, Plaintiff contends that he outperformed Ms. Stoehr in the first round of interviews by providing more detailed answers and that, since Ms. Stoehr did not perform as well

in the first interview, she could not have performed better in the second interview. Plaintiff's Opposition, at 12-13. Additionally, Plaintiff alleges that a factfinder could question Defendant's motive because his answer to the seventh question during the second interview was a "more desirable response" than Ms. Stoehr's answer.[12] Plaintiff's Opposition, at 13.

As a threshold point, based upon the qualifications stated in the Field Activities Supervisor's job description (which Defendant is free to determine), *see Texas Dep't of Community Affairs*, 450 U.S. at 259, the Court finds that Ms. Stoehr met the qualifications for said position. The qualifications for the supervisor position required a Bachelor's degree in business or equivalent with five years experience in the Field Services area. SOF at ¶ 13. Here, Ms. Stoehr possessed five plus years experience in the Field Services Area, which plainly meets the requirements for the supervisor position.[13] Thus, based on the requirements listed in the position description, Ms. Stoehr and Plaintiff were equally qualified for the supervisor position, and, as such being the case, the Court

---

[12]

With regard to the seventh question, Plaintiff and Ms. Stoehr were both asked why they wanted to become a supervisor. *See* Docket No. 29-2, Defendant's Responses, at 7 (Exhibit 11 to McGill Deposition). Plaintiff argues that he responded that he enjoyed problem solving and challenges whereas Ms. Stoehr answered that she wanted a better pension. *See* Docket No. 29-2, Defendant's Responses, at 10 (Exhibit 12 to McGill Deposition). However, further review of the record reveals that in addition to wanting a better pension, Ms. Stoehr also replied that she wanted "a change, long term career, . . ., benefits, . . ., [a] challenge." Docket No. 28, Defendant's Reply Brief in Support of Motion for Summary Judgment, Exh. 1, at 5,10 (hereinafter, "Defendant's Reply"). *See also* Defendant's Reply, at 3 ("She indicated on here [Cole's notes] she wants better pension, she wants change, she feels that she has more chance of moving") (quoting Cole Deposition, at 39:8-20).

[13]

Moreover, Ms. Stoehr had three more years experience as a Specialist B than Plaintiff. Ms. Stoehr was a Specialist B from June 1994 until September 2004. Docket No. 20, Exh. C, at 7:1-4 (Deposition of Lisa Stoehr) (hereinafter, "Stoehr Deposition"). Plaintiff has been a Specialist B from July 1997 to the present. Plaintiff's Deposition, at 19:8-13.

declines to review the employer's decision to choose between two equally qualified candidates.[14]

*See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. at 259 (providing that the employer "has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria"). *See also Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180-1181 (7th Cir. 2002) ("in effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected

---

[14]

Furthermore, Plaintiff's argument that he was more qualified for the supervisor position is factually flawed. First, a bachelor's degree was not *per se* required for the position. SOF at ¶ 15; 115-116. This is evidenced by the fact that none of the Field Activities Supervisors at the time when Defendant posted the position had college degrees. SOF at ¶17. Second, while the position description calls for a bachelor's degree in business or equivalent with five years experience in the Field Services area, Plaintiff's bachelor's degree is in psychology. Thus, according to a plain reading of the position description, Plaintiff's bachelor's degree in psychology does not make him more qualified for the supervisor position than Ms. Stoehr. Further, even if the Court endorsed Plaintiff's reading of the position description, i.e., requiring a bachelor's degree in business *or* the equivalent degree plus five years experience in the Field Services area, *see* Plaintiff's Opposition, at 12; Plaintiff's Response at ¶¶14-15 (which the Court declines to do), it stretches the imagination that a degree in psychology is equivalent to a degree in business in contrast to degrees in administration or finance, or perhaps even economics or marketing. In the end, Plaintiff's argument that he is more qualified is not supported by evidence of record, but instead boils down to his subjective belief. *See Dungee v. Northeast Foods*, 940 F. Supp. 682, 689 (D.N.J. 1996) (citations omitted) ("The plaintiff's subjective belief that [he or she] was more qualified for the job does not create an issue of fact for the jury"). *See also Eason v. Del Monte Foods*, Case No. 04-1698, 2006 WL 2645146, at *6 (W.D. Pa. Sept. 14, 2006) (providing that "Plaintiff's own opinions and beliefs regarding her qualifications do not create a genuine issue of material fact regarding whether Defendant's proffered reasons are a pretext for discrimination) (citations omitted); *Grauer v. Federal Express Corp.*, 894 F. Supp. 330, 334 (W.D. Tenn. 1994), *aff'd* 73 F.3d 361 (6th Cir. 1996) (The subjective belief that plaintiff was more qualified was "in essence a mere disagreement with the corporation's business judgment, and does not create an issue of fact").

Lastly, Plaintiff asserts that "superior qualifications may itself suffice to show pretext." Plaintiff's Opposition at 11 (citing *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 1197 (2006). *See also, Patterson v. McLean Credit Union*, 491 U.S. 164, 187-188 (1989), *superseded on other grounds by* 42 U.S.C. § 1981(b) (a plaintiff "might seek to demonstrate that respondent's claim to have promoted a better qualified applicant was pretextual by showing that she was in fact better qualified than the person chosen for the position"). Thus, the Court notes that superior qualifications may be used to demonstrate pretext. However, Plaintiff fails to meet that burden for the above-mentioned reasons.

for the job that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question'") (citation omitted); *Jones v. Barnhart*, 349 F.3d 1260, 1267-1268 (10th Cir. 2003); *Conine v. SEPTA*, Case No. 03-3858, 2005 U.S. Dist. LEXIS 10453, at *25 (E.D. Pa. March 17, 2005).

With respect to Plaintiff's argument that he outperformed Ms. Stoehr in the first round of interviews by providing more detailed answers[15] and that he provided a better answer to the seventh question during the second interview, the success of Plaintiff's argument turns on his subjective perception of his performance and Ms. Stoehr's performance during the interview process.

---

[15] In support of this contention, Plaintiff relies on the rating matrix developed by Ms. Minor to summarize her view of the candidates. However, this rating system was not a requirement of the interview process under Defendant's company policy. SOF at ¶ 47. With respect to the matrix, Ms. Minor gave Plaintiff a total of 4.6 points and Ms. Stoehr a total of 4.4 points. SOF at ¶ 48. The first set of interviews was not the determining factor in the employment decision because all three interviewers decided that a second interview was necessary since both Plaintiff and Ms. Stoehr were good candidates. *See* McGill Deposition, at 34:15-36:24, 62:25-63:4 ("Because at the end of the first round of interviews, we felt that we had two qualified candidates, and in fairness to both of them, we did not feel we could make a decision based on the information we had at that time."); Cole Deposition, at 14:17-16:25 ("I just felt that they were two close candidates and we should have the second interview."); Docket No. 27-3, Exh. 7, at 25:20-23 (Deposition of Lisa Minor) (hereinafter, "Minor Deposition")("Because it would be like a tie breaker, that's how close they were in their performances."); Docket No. 27-3, Plaintiff's Opposition, Exh. 13 at 31 ("Per our post interview discussion, could be beneficial to bring candidates back for second interview. Present several scenarios a supervisor would face and ask 'how would you handle this situation.' ").

Furthermore, the record shows that Mr. McGill did not discuss with Ms. Minor how she rated Plaintiff and Ms. Stoehr on her matrix. McGill Deposition, at 38:11-15. Additionally, the rating matrix was not used during the second set of interviews because Ms. Minor was unavailable at the time when the employment decision was made. SOF at ¶¶ 64-65. Courts have held that a rating system or matrix, under the direction of the employer, may be used as evidence to determine the existence of pretext in employment discriminations matters. *See Martin v. GE Co.*, 891 F.Supp. 1052 (E.D. Pa. 1995); *Storti v. First Fid. Bank*, Case No. 97-5283, 1998 U.S. Dist. LEXIS 10457 (E.D. Pa. July 16, 1998); *Lawrence v. National Westminster Bank*, 98 F.3d 61 (3d Cir. 1996). However here, Defendant did not require the rating matrix and moreover, Mr. McGill did not use the matrix in making his decision as to the promotion. Therefore, Plaintiff does not raise a genuine issue of fact with respect to his alleged superior performance in the first interview.

However, it "is the perception of the decisionmaker that is relevant, not the plaintiff's perception of h[im]self." *Dungee v. Northeast Foods*, 940 F. Supp. 682, 689 (D.N.J. 1996) (citations omitted). *See also, Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991), overruled in part on other grounds by *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Delaski v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 65 Fed. Appx. 368, 372 (3d Cir. 2002). While Plaintiff may believe that Ms. Stoehr's lower rating in the first interview hindered her performance in the second interview and that his answer to the seventh question was better, his perception of his performance is not key. Thus, Plaintiff fails to carry his burden of demonstrating pretext on this argument.

4.    *Manipulation of the decision-making process*

Finally, Plaintiff asserts that Defendant manipulated the decision-making process or deviated from its standard hiring procedure by (1) deciding to have a second round of interviews; (2) requesting a "ride-along" in between the first and second interview dates; and (3) accepting Ms. Stoehr's belated resume. Plaintiff's Opposition, at pp. 14-17.

With respect to the decision to hold a second round of interviews, Plaintiff asserts that Defendant is not required to hold the second interview but this second interview gave Defendant a reason to select Ms. Stoehr because she was able to demonstrate her union background and experience with Defendant's corporate policies. *Id*. at p. 15. Plaintiff asserts that Defendant was "gearing" the second interview  because Mr. McGill needed to find a reason to support his decision to select Ms. Stoehr. *Id.* As Plaintiff notes, Mr. McGill has hired twenty people during his employment with Defendant and decided to have a second interview during two of those instances, which included the interviews with Plaintiff and Ms. Stoehr. *Id.* at 15; McGill Deposition, at 61:16-62:2. While Defendant does not require the use of a second interview, the same is not prohibited.

Furthermore, Ms. Minor and Mr. Cole both agreed that a second interview would be helpful to decide who should receive the promotion. Cole Deposition, at 16:21-25; Minor Deposition, at 25:20-23. Again, Plaintiff is asking this Court to second-guess Defendant's valid business decision, to hold a second interview, which the Court declines to do.[16] *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d at 527.

With respect to Ms. Stoehr's "ride-along" with Mr. McGill, Plaintiff admits that he does not know what they discussed other than Ms. Stoehr's comment that she put Mr. McGill "through the ropes." SOF at ¶ 62; Plaintiff's Facts at ¶ 62. Nevertheless, despite no evidence to support this claim, Plaintiff asserts that a jury could infer that Ms. Stoehr and Mr. McGill discussed the open position during the "ride-along." Plaintiff's Opposition, at 16. Such an argument flies in the face of an inference, which, by definition, derives from a fact. *See* Black's Law Dictionary 347 (2d pocket ed. 2001) (defining inference as "[a] conclusion reached by considering other facts and deducing a logical consequence from them"). However here, the record demonstrates that neither Ms. Stoehr nor Mr. McGill discussed the vacant Field Activities Supervisor position during the "ride-along." SOF at ¶ 61, Stoehr Deposition, at 35:7-25, McGill Deposition, at 41:4-20. Moreover, the record shows that the purpose of "ride-along" was for Mr. McGill "to go in the field" and "experience a day in the life with each one of the workers in [his] different job categories." McGill Deposition, at 39:7-9. Mr. McGill "asked the Field Activities Supervisor in charge of each

---

[16]

Furthermore, Plaintiff does not provide any evidence to support his conclusion that Mr. McGill was using the second interview as a cover for discrimination. "Because speculation unsupported by fact cannot create a genuine issue of fact precluding summary judgment," Plaintiff does not demonstrate pretext with respect to Defendant's decision to use a second interview and therefore, does not create a genuine issue of fact. *Geraci v. Moody-Totturp Int'l.*, 905 F. Supp. 241, 247 (WD Pa. 1995), *affm'd* 82 F.3d 578 (3d Cir. 1996).

location to assign a Specialist B in their respective locations to spend a day in the field with [him] to show [McGill] what they do." Docket No. 20, Exh. J, at ¶ 21 (Affidavit of Keith McGill) (hereinafter, "McGill Affidavit"). Mr. McGill "had no role in selecting the Specialist Bs who were assigned to [him] and [he ]did not know which employees would be assigned to [him] until [he] arrived at each of the locations ... ." McGill Affidavit, at ¶ 22. Rather, it was Mr. Duss, the Penn Hills Field Activities Supervisor, who selected Ms. Stoehr to escort Mr. McGill on the "ride-along." McGill Deposition, at 39:10-15. Further, Plaintiff does not introduce any evidence that the discussion during the "ride-along" concerned the supervisor position or a discriminatory plan to deny Plaintiff the promotion. On the contrary, Plaintiff asks this Court to speculate as to the content to that conversation and that a jury would not find Ms. Stoehr or Mr. McGill to be credible witnesses. Plaintiff's Opposition, at 16. As stated previously, "speculation unsupported by fact cannot create a genuine issue of fact precluding summary judgment." *Geraci v. Moody-Totturp Int'l.*, 905 F. Supp. at 247. Thus, Plaintiff fails to demonstrate pretext with respect to the "ride-along."

Lastly, with respect to Ms. Stoehr's alleged untimely submission of her resume, *see* Plaintiff's Opposition, at 17, Plaintiff does not point to any evidence, besides his own affidavit[17], in support of this contention. Further, no matter when Ms. Stoehr submitted her resume, the timing of

---

[17]

Defendant argues that Plaintiff's affidavit testimony must be rejected because it contains hearsay and unsupported statements by Ms. Jackson. Defendant's Reply, at 5. Defendant further asserts that Plaintiff's claim has "no foundation to support that [Ms. ]Jackson . . . had any knowledge of whether [Ms.] Stoehr had submitted her resume at the time she applied" because Ms. "Jackson did not become an employee of the [Defendant] until approximately 8 months after [Ms.] Stoehr was promoted to the McKeesport Field Activities Supervisor position. *Id.* Moreover, the record demonstrates that Ms. Jackson does not recall telling Plaintiff that Ms. Stoehr submitted her resume late. Docket No. 28-2, at 10:7-25 (Deposition of Tausha Jackson). However, the Court notes that even considering the affidavit, summary judgment is appropriate. Thus, the Court need not dwell on this issue.

its submission in this Court's mind is not enough to rebut Defendant's legitimate, nondiscriminatory reason for denial of a promotion. As stated previously, this Court will not reassess Defendant's valid business judgment.[18]

## CONCLUSION

To survive summary judgment, a plaintiff need only present evidence from which a reasonable factfinder could conclude *either* that the defendant's proffered justifications are not worthy of credence or that the real reason for the decision was discrimination. *Fuentes*, 32 F.3d at 764. Construing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences therefrom in his favor, the Court finds that the Plaintiff has failed to meet this burden in establishing that the proffered legitimate, nondiscriminatory reason for denial of promotion to a supervisor was pretextual.

Based on the foregoing reasons, Defendant's Duquesne Light Company's Motion for Summary Judgment [DE 17] is **GRANTED**. An appropriate Order follows.


*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge


cc:     All Counsel of Record.

Date:   February 6, 2008.

---

[18]

Plaintiff also argues that Mr. McGill's hiring statistics is not a permissible basis for granting summary judgment and that Defendant is not entitled to a presumption of non-discrimination because both Plaintiff and Mr. McGill are males. Plaintiff's Opposition, at 17-19. This Court, however, bases its judgment on the reasons outlined in the body of this Opinion finding that Plaintiff has not demonstrated material issues of fact as to pretext.

22